# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

MARK AND VICKY RUSSELL,

     Plaintiffs,

  v.

ONEWEST BANK FSB.; PIONEER
LENDER TRUSTEE SERVICES, LLC;
FEDERAL HOME LOAN MORTGAGE
CORPORATION; and UNKNOWN
INDIVIDUALS, TRUSTS, AND
ENTITIES JOHN and/or JANE DOES,
1-100,

     Defendants.

Case No. 1:11-cv-00222-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

The Court has before it Defendants' Motion to Dismiss and Defendants' Motion to Strike Affidavits of Mark Russell and Scott Rose. (Dkts. 10, 28.) Having reviewed the Motions and Plaintiffs' responses, the Court has determined that the Motions are suitable for disposition without oral argument. For the reasons explained below, the Court will grant in part and deny in part the Motion to Strike. The Court will grant, in part, the Motion to Dismiss. With respect to one of Plaintiffs' state law based claims, the Court will reserve judgment pending the decision of the Idaho Supreme Court in a case likely to resolve the state law issue before the Court, *Trotter v. Bank of New York Mellon*, No. 38022-2010.

# BACKGROUND

This case concerns the non-judicial foreclosure sale of an investment property in Meridian, Idaho, formerly owned by Plaintiffs Mark and Vicky Russell. Plaintiffs claim that the foreclosure on their property and loan modification proceedings prior to the foreclosure violated various provisions of state and federal law. For the purposes of this motion, "all of the [Plaintiffs'] allegations of material fact" are accepted as true. *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).

In 2007, Plaintiffs received a loan for $311,650 from IndyMac Bank, F.S.B. ("IndyMac"), which they used to construct a four condo unit on property they owned. (Compl. ¶ 11, Dkt. 1.) Plaintiffs signed a Promissory Note ("Note") to IndyMac, which was secured by a Deed of Trust on the property ("Deed"). The Deed designated Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, and Transnation Title Insurance Company as the trustee. (*Id.* ¶ 14.)

The designated beneficiary, MERS, is an electronic registry database that tracks the transfer of the beneficial interest in residential loans. *See Cervantes v. Countrywide Home Loans*, __ F.3d __, 2011 WL 3911031 at *2 (9th Cir. Sept. 7, 2011). To facilitate transfer of interest in these loans without the burden of recording each transfer of the trust deed or promissory note, as required by state laws, MERS serves as "the nominal record holder of the deed." *Id.* Through MERS, Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased an interest in Plaintiffs' loan. Freddie Mac packaged Plaintiffs' loan into a larger pool of loans, and then into an unknown trust

entity, which managed the pool and sold collateralized pieces of its holdings to investors, including slices of interest in Plaintiffs' loan. (Compl. ¶ 15.)

On July 11, 2008, IndyMac collapsed and was closed by the Office of Thrift Supervision. (*Id.* ¶ 3.) Substantially all of its assets were passed to a newly chartered federal bank, IndyMac Federal, F.S.B. ("IndyMac Federal"). The Federal Deposit Insurance Corporation ("FDIC") managed IndyMac Federal as conservator. (*Id.* ¶ 3.)

On August 4, 2010, IndyMac Federal signed a document appointing Defendant Pioneer Lender Trustee Services, LLC ("Pioneer") as the successor trustee. (*Id.* ¶ 31.) On August 5th, MERS assigned its interest as beneficiary to IndyMac Federal. (*Id.* ¶ 32.) Both documents were recorded in Ada County on August 8th. (Compl., Ex. 1, Dkt. 1-1 at 2; Ex. 2, Dkt. 1-2 at 2.) At some subsequent point, IndyMac Federal sold its interest in Plaintiffs' loan to Defendant OneWest Bank F.S.B. ("OneWest").

Meanwhile, Plaintiffs fell behind on their mortgage payments. On February 4, 2010, Regional Trustee Service Corporation ("RTS"), an agent of Pioneer, recorded a Notice of Default indicating that Plaintiffs owed $15,387.60 in back payments. (McFarland Aff., Ex. E, Dkt. 10-3 at 36.) Plaintiffs did not receive a copy of the Notice of Default. (Compl. ¶ 43.) On February 10th, Pioneer served Plaintiffs with a Notice of Sale, which scheduled Plaintiffs' property for a foreclosure sale on June 10, 2010. (*Id.*)

Plaintiffs entered negotiations with OneWest concerning loan modification and forbearance. (*Id.* ¶ 44.) OneWest represented to Plaintiffs that loan modification might be possible if they brought their payments current. This impelled Plaintiffs to make

payments of approximately $20,000 during June, July, and August of 2010. (*Id.* ¶ 106.)
During this time, Pioneer repeatedly pushed back the date of the foreclosure sale
originally scheduled for June 10th. (*Id.* ¶ 45.)

Despite Plaintiffs' arrearage payments, on October 10th Pioneer conducted a
foreclosure sale on Plaintiffs' property, and it was purchased by Freddie Mac. (*Id.* ¶ 116.)
On April 15, 2011, the Trustee's Deed transferring title of the property to Freddie Mac
was recorded in Ada County. (*Id.* ¶ 48.)

Subsequently, Plaintiffs filed the Complaint at issue here, alleging that Defendants
lacked authority to foreclose, that the foreclosure sale violated various provisions of
Idaho law, that Defendants' failure to modify their loan violated several federal policies,
and that Defendants had committed several state law torts. Defendants now move to
dismiss under Rule 12(b)(6).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
of the claim showing that the pleader is entitled to relief," in order to "give the defendant
fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule
12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth
"more than labels and conclusions, and a formulaic recitation of the elements of a cause
of action will not do." *Id.* at 555. To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant

has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with"

a defendant's liability, it "stops short of the line between possibility and plausibility of

'entitlement to relief.' " *Id.* at 557.

In a more recent case, the Supreme Court identified two "working principles" that

underlie the decision in *Twombly. See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937,

1949 (2009). First, the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. *Id.* "Rule 8 marks a notable

and generous departure from the hyper-technical, code-pleading regime of a prior era, but

it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may

be appropriate when the plaintiff has included sufficient allegations disclosing some

absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783,

n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision

one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*).[1] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

## ANALYSIS

## 1. Motion to Strike Plaintiffs' Exhibits

Defendants move the Court to strike exhibits provided in support of Plaintiffs' Response to the Motion to Dismiss.

---

[1] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly. See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice without transforming the motion to dismiss into a motion for summary judgment. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 n.1 (9th Cir. 2004)**.** The Court may also examine documents of undisputed authenticity referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Applying these standards, the Court will grant Defendants' Motion to Strike with regard to Exhibit 1, attached to the original Response to the Motion to Dismiss. (Dkt. 21-1.) The Court cannot take judicial notice of an individual's affidavit, nor is the affidavit incorporated by reference in the Complaint. The Court will also grant the Motion with respect to Exhibits 2, 3, 4, 5, and 10, attached to the amended Response to the Motion to Dismiss. (Dkt. 22-2, -3, -4, -5, -10.) The Court cannot take judicial notice of private correspondence between the parties. These documents cannot be incorporated by reference because Defendants reasonably dispute their authenticity or completeness. *See Knievel*, 393 F.3d at 1076. With respect to Exhibit 10, the Court need not take judicial notice of a federal law to consider it.

The Court will deny Defendants' Motion with respect to Exhibit 2 attached to the original Response. (Dkt. 21-2.) The letter, informing Plaintiffs of the sale of their

property in foreclosure, is incorporated by reference in the Complaint (¶ 45) and its authenticity is not challenged by Defendants. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997) (allowing consideration of document in these circumstances). The Court will also deny Defendants' Motion with respect to Exhibit 1, the Rescission of Notice of Default, attached to the second Response. (Dkt. 22-1.) Exhibit 1 is a publicly recorded document relevant to the time line of events alleged in the complaint. The Court can and does take judicial notice of the Rescission. *See Disabled Rights Action Comm.*, 375 F.3d at 866 n.1 (allowing judicial notice of matters of public record). Finally, the Court will deny the Motion with respect to Exhibits 6 through 9, attached to the second Response. (Dkt. 22-6 to 22-9.) These documents, all contracts between federal entities and various banks, are made publicly available by the Federal Deposit Insurance Corporation via an official government website and qualify as public records subject to judicial notice. *See, e.g., NRDC v. Kempthorne,* 539 F. Supp. 2d 1155, 1167 (E.D. Cal. 2008) (holding that water contracts entered into by the Bureau of Land Management and made available via an official government website were proper subject of judicial notice).

The Court also notes that it can consider the various recorded exhibits submitted by Defendants at this stage, both because they are public records subject to judicial notice and because the documents are referenced in the Complaint and there is no question of their authenticity. *Cervantes*, 2011 WL 3911031 at *5 n.2.

## 2.     Request for Declaratory Relief that the Trustee's Deed is Void

In the first cause of action, Plaintiffs seek a declaratory judgment that the Trustee's

Deed is void. They plead a litany of theories, including that (1) securitization of the Note invalidated the foreclosure sale, (2) assignment of Pioneer as successor trustee was invalid, (3) Plaintiffs were not provided the notice of default required by Idaho law, (4) the foreclosure sale was improperly postponed, (5) Freddie Mac did not have authority to make a credit bid at the foreclosure sale, and finally (6) the Trustee's Deed and other documents state an incorrect description of the property. The Court addresses each of these claims in turn.

### A. "Securitization" of the Promissory Note

Plaintiffs allege that during the time in which MERS was the beneficiary of the Deed, it transferred interest in the Note to unknown investors, making foreclosure by OneWest impossible. Plaintiffs allege that MERS transferred the Note to a pool of securities, scrambling ownership of the Note. Plaintiffs' conclude that this "securitization"of the Note made it impossible for OneWest to "produce the Note" and foreclose on Plaintiffs' property. (Compl. ¶ 17) They also argue that the transfer of beneficial interest in the loan through the MERS system is analogous to a transfer of the Note itself, which must be recorded to be valid under Idaho Code § 45-1505(1). Plaintiffs' arguments amount to two separate theories through which it may be entitled to relief: First, a party seeking to foreclose must be able to demonstrate a substantive right to do so before they can avail themselves of the procedures of the Idaho trust deed statute. Second, even if the party can establish a right to foreclose, they must show that all assignments of interest in the Deed and Note comply with the requirements of Idaho law

governing nonjudicial trust sales, Idaho Code §§ 45-1502 to -1515, and recording of interests in property, Idaho Code § 55-601.

As the Ninth Circuit recently held, claims of this nature must be grounded in "a violation of state recording and foreclosure statutes." *Cervantes*, 2011 WL 3911031 at *7. The Idaho Supreme Court, however, has not yet published a decision addressing Plaintiffs' theories in the context of Idaho's trust deed statute. In cases interpreting similar statutory schemes, there has been at least some disagreement among courts. *Compare Ciardi v. Lending Co., Inc.*, No. 10-0275, 2010 WL 2079735, at *3 (D. Ariz. May 24, 2010) (holding assignments of interest through MERS did not violate Arizona trust deed statute), *with Hooker v. Northwest Tr. Servs.*, No. 10–3111, 2011 WL 2119103, at *3-4 (D. Or. May 25, 2011) (holding assignments of interest through MERS did violate Oregon trust deed statute). The Idaho Supreme Court has recently heard oral argument in a case involving claims similar to those Plaintiffs raise here, *Trotter v. Bank of New York Mellon*. Rather than engaging in a "trailblazing" interpretation of state law, the Court concludes that the best course of action is to reserve its ruling on this issue. *Cervantes,* 2011 WL 3911031, at *7 (internal quotations omitted). After the Idaho Supreme Court issues its decision in *Trotter*, the Court will then rule on whether Plaintiffs' factual allegations amount to a plausible claim for relief under Idaho state law.

## B. *Appointment of Successor Trustee and Successor Beneficiary*

Plaintiffs allege that Pioneer's appointment as trustee is invalid because IndyMac Federal appointed Pioneer as trustee the day *before* MERS assigned its interest in the

Deed of Trust to IndyMac Federal. Plaintiffs therefore allege that IndyMac Federal had no authority to appoint a successor trustee on the date that they attempted to do so.

Plaintiffs' claim fails because the legally relevant date for determining the validity of IndyMac Federal's appointment of a successor trustee is the date on which the appointment was recorded. Under Idaho Code § 45-1504(2),

> [upon] the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

Under this language, the beneficiary vests the authority of trusteeship through the act of recording.[2] By August 8, 2010, the date on which IndyMac Federal recorded the appointment of a successor trustee, MERS had assigned its interest as beneficiary back to IndyMac Federal. (*See* Mot. to Dismiss, Ex. C., Dkt. 10-3 at 29-31) There is thus no doubt that IndyMac Federal was the proper party to vest Pioneer with trustee powers on the date that Pioneer actually assumed trusteeship. The premature nomination of Pioneer as trustee on August 4th does not defeat the validity of the recorded transfer of authority on August 8th.

Plaintiffs also argue that MERS lacked authority to appoint a successor beneficiary. MERS' lack of authority is conclusively alleged: "MERS never held an

---

[2]This understanding of the statute is further illuminated by its history. Until 2005, the statute required that the beneficiary give notice of intent to appoint a successor trustee, and allowed the beneficiary to "nominate a successor trustee" twenty days after notice was provided. Idaho Code § 45-1504(2) (2004) (emphasis added). This requirement was removed to ease the process for replacing a trustee. 2005 Idaho Sess. Laws ch. 236. However, the revision does not change that a successor trustee is only a nominee without any legal authority until the beneficiary records the appointment of the successor.

interest in the Note; and MERS can not transfer what it does not have (Compl. ¶ 37.) This is apparently related to the allegation that "MERS did not even obtain all of the bundle of sticks in the Deed of Trust as well as obtaining rights to <u>only</u> act as a nominee." (Compl. ¶ 15.) This claim is described coherently in the Plaintiffs' Opposition to the Motion to Dismiss. That, however, cannot remedy the deficiencies of the Complaint itself. The Court will dismiss this portion of the Complaint because it contains, at best, only "labels and conclusions." *Twombly*, 550 U.S. at 555.

### C.    *Notice of Default*

Plaintiffs allege that they did not receive a notice of default until December 30, 2010, almost three months after the foreclosure sale apparently occurred. They argue that this violates the notice of default requirements set out in Idaho Code § 45-103(3).

The Idaho Deed of Trust statutes set out four requirements that must be met before a trustee may initiate foreclosure sale proceedings. *See* Idaho Code § 45-1505. One of those requirements is proper notice of default. Compliance requires the trustee to record notice of default, and to "mail the [notice of default] to any individual who owns an interest in [the property at issue]." *Id.* § 45-1505(3).

Defendants argue that § 45-1505(3) does not specify that delivery of notice of default must occur at any particular time. While Defendants' assertion is accurate on its face, the Court cannot conclude that notice of default provided *after* a borrower's property has already been sold meets the requirements of the statute. Generally, default is to be noticed prior to notice of sale. *See id.* § 45-1506(2) (requiring recording of notice of

default prior to filing notice of sale). Section 45-1505(3) also requires that the notice of default include several mandatory advisements to borrowers who might be facing foreclosure. For instance, the notice of default must warn the grantors of the trust deed to be cautious about companies claiming they can save the borrower from foreclosure and advises "[d]o not delay seeking advice, because the longer you wait, the fewer options you may have." *Id.* § 45-1505(3). The purpose of the statute cannot be achieved unless the trustee is required to provide these warnings before foreclosure. Reading the notice of default requirements in the broader context of the entire deed of trust statute, the Court concludes that Plaintiffs' have adequately alleged a violation of § 45-1505(3).

However, the trust deed statute also includes a buyer safe harbor provision that limits a borrower's ability to challenge a finalized sale. Section 45-1508 provides that a trustee sale under this act forecloses and terminates all interest in the property covered by the trust deed to all persons who are given notice under section 45-1506, as well as any other person claiming by, through or under such persons given notice. Such persons shall have no right to redeem the property from the purchaser at the trustee's sale. Failure to give notice to such persons as required by section 45-1506 shall not affect the validity of the sale as to persons notified or having actual knowledge of the sale. Furthermore, failure to comply with the provisions of section 45-1506 shall not affect the validity of a sale in favor of a good faith purchaser for value at or after such sale, or any successor in interest thereof.

The remaining issue, therefore, is whether this safe harbor provision precludes

Plaintiffs' claim for relief. The Idaho Supreme Court has interpreted § 45-1508 in two cases. In *Taylor v. Just*, 59 P.3d 308 (Idaho 2002), a trustee held a foreclosure sale, but refused to transfer the deed of trust to the high bidder after realizing that the borrowers were not actually in default. *Id.* at 309. The high bidder brought suit, claiming the borrowers were foreclosed from asserting an interest in the property because the trustee had complied with the notice of sale procedures. The court held that full compliance with the notice of sale procedures did not prevent invalidation of the foreclosure when the buyer was not actually in default. The court reasoned that "by [the terms of section 45-1508] it only applies to sales challenged because of a failure to comply with the provisions of Idaho Code § 45-1506." *Id.* at 313.

In *Spencer v. Jameson*, 211 P.3d 106 (Idaho 2009), the original owners of a foreclosed property sought invalidation of a foreclosure sale, alleging that the credit bid purchaser had not paid cash for the portion of the bid in excess of the loan amount, in violation of Idaho Code § 45-1506(9), which requires full payment of the bid amount at the time of sale. *Id.* at 111. The court found that the purchaser violated the statute by not paying the full bid price at the time the trustee transferred the deed to them. *Id.* at 113. Nonetheless, the court refused to invalidate the sale, holding that under § 45-1508 "the sale is final once the trustee accepts the bid as payment in full unless there are issues surrounding the notice of the sale." *Id.* The court reasoned that its interpretation "promote[d] the legislature's interest in preserving the finality of title to real property." *Id.* The court held that it was irrelevant whether the buyer was a good faith purchaser,

because the sale became final upon the trustee's acceptance of the bidder's payment, terminating the borrower's interest in the property. *Id.* at 114.

Though the *Spencer* court did not cite to *Taylor*, its ruling clearly limits the scope of the earlier decision. The *Spencer* court emphasized two factors that distinguish *Taylor*. First, in *Spencer* the trustee accepted the bid and transferred the deed to the purchaser, while in *Taylor* the trustee returned the bidder's check and refused to transfer the deed. *Spencer*, 211 P.3d at 111; *Taylor*, 59 P.3d at 309. The trustee's execution of the deed in *Taylor* finalized the sale, triggering the buyer safe harbor provisions of § 45-1508. *Spencer*, 211 P.3d at 113. Second, in *Spencer*, the court emphasized that the statute provided the trust deed grantors with "a statutory remedy" other than voiding the foreclosure sale: "Grantors may still turn to I.C. § 45-1507 which governs the manner which [sic] the sale proceeds are to be distributed for relief." *Spencer*, 211 P.3d at 113. In contrast, there is no remedy for grantors who are not actually in default, like those in *Taylor*, other than judicial avoidance of the foreclosure sale. Reading these cases together, the Court concludes that § 45-1508 prevents grantors from voiding a foreclosure sale where (1) notice of sale was given under § 45-1506, (2) the trustee accepted payment and executed the deed to the bidder, and (3) the statutory scheme affords the grantor alternative protections or remedies for the particular violation of the Trust Deed statutes at issue. This is the reading of *Spencer* that is most generous to Plaintiffs; state courts could well interpret *Taylor* as only controlling when the grantor is not actually in default, the interpretation that Defendants urge this Court to adopt.

Nonetheless, applying these standards to the Complaint, the Court holds that Idaho Code § 45-1508 prevents Plaintiffs from seeking avoidance of the foreclosure sale. First, the Complaint contains no allegation of a violation of the notice of sale requirements set out in § 45-1506. Second, the Complaint concedes that Pioneer, the trustee, did accept Defendant's tender of payment and did transfer the Deed. (Compl. ¶ 48.) Third, the strict notice of sale requirements serve to protect individuals in Plaintiffs position from being subject to a foreclosure sale of their property without any notice that they have defaulted. *See* Idaho Code § 45-1506. The notice of sale requirement creates a redundancy with regard to the notice of default because it is required to include a statement of "[t]he default for which the foreclosure is made." § 45-1506(4)(d). Notice of sale must be sent at least 120 days before the trustee's sale, and any procedural violations can serve as a basis for invalidating the sale. §§ 45-1506(2) & 45-108. The notice of sale sent to Plaintiffs did include the required statement of default. (Mot. to Dismiss, Ex. F, Dkt. 10-3 at 42). Further, Plaintiffs acknowledge they had notice of the default, evidenced by the three months during which they allege they worked with OneWest to reach a loan modification. (*See* Compl. ¶¶ 45, 115.)

On these facts, the interest in preserving the finality of transfer of title created by the safe harbor provision, *Spencer*, 211 P.3d at 113, precludes the Court from voiding the sale due to an alleged violation of § 45-1505(3). Accordingly, the Court will grant the motion to dismiss this portion of the first cause of action. Because the § 45-1508 safe harbor provision would bar any claim of inadequate notice of default, this claim is

dismissed with prejudice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 762 (9th Cir. 2007) (dismissal with prejudice appropriate where amendment is futile).

### D. *Improper Postponement of Foreclosure Sale*

Plaintiffs allege that the foreclosure sale did not occur on June 10, 2010, the date indicated in the notice of sale documents sent out by the trustee.[3] Instead, it was postponed until October 1, 2010.

Under Idaho Code § 1506(8), the trustee may postpone a foreclosure sale by announcing its postponement at the time and place originally set for the sale. § 1506(8). The Complaint states that "Plaintiff is without reason to believe the foreclosure sale was postponed in accordance with [Idaho law]." (Compl. ¶ 45). This does not amount to an affirmative allegation that the trustee did not comply with the requirements of § 1506(8). Plaintiffs' allegation that OneWest postponed the sale to continue the workout process also does not amount to a claim that the procedural requirements of § 1506(8) were not met. Accordingly, the Court will grant the motion to dismiss this portion of the first cause of action.

### E. *Improper Credit Bid*

---

[3] In their response to the Motion to Dismiss, Plaintiffs extend their argument. They claim that they entered a forbearance agreement that eliminated the default, requiring OneWest to re-initiate notice procedures in the event of any future default. The Complaint, however, does not allege that the terms of their forbearance agreement cured the default. *See Taylor*, 59 P.3d at 312 (holding that language of forbearance contract altered obligation under original promissory note). Therefore, the Court does not address this argument.

Plaintiffs allege that Freddie Mac made a credit bid for the property at the foreclosure sale. "[A] a credit bid means that the holder of the note bids up to the amount of money due it by the debtor, thereby extinguishing the debtor's debt to the extent of the bid." *Fed. Home Loan Mortg. Corp. v. Appel*, 137 P.3d 429, 431 (Idaho 2006). Credit bids are permissible under the Idaho deed of trust statute. *Id.* at 432. However, Plaintiffs allege that Freddie Mac was not the holder of the Note and therefore lacked authority to enter a credit bid for the property.

Plaintiffs' claim is barred by the safe harbor provision of Idaho Code § 45-1508. Absent inadequate notice of sale, after a trustee has accepted a bid and transferred the Deed, any deficiencies in a credit bid do not invalidate the sale. *Spencer*, 211 P.3d at 113. The grantor's remedy for any inadequacy in an accepted bid must be pursued under Idaho Code § 45-1507, which governs disbursement of the proceeds from a foreclosure sale. *Id.* Plaintiffs' concede that the trustee accepted the bid and transferred the Deed, and therefore they have no plausible cause of action for the requested relief. Because amendment would be futile, the Court will dismiss this portion of the first cause of action with prejudice.

### F. *Incorrect Legal Description of the Property*

Plaintiffs allege that the Trustee's Deed, the Notice of Sale, and the Notice of Default all state the incorrect legal description of the property. The deed of trust statute requires that each of these documents contain only "a description of the property conveyed." Idaho Code §§ 45-1505(3), 45-1506(4)(b) & 45-1509(2). In this case, each of

these documents matches the description of the property in the original Deed of Trust. (Mot. to Dismiss, Ex. B, Dkt. 10-3 at 19.) There is no plausible allegation that the language of the original Deed of Trust does not describe the property at issue. Accordingly, the Court will grant the motion to dismiss this portion of the first cause of action.

**2.      Fraud and Intentional Misrepresentation**

In the third and sixth causes of action Plaintiffs allege that OneWest fraudulently represented its willingness to negotiate a reasonable modification to Plaintiffs' loan in order to avert foreclosure. Plaintiffs relied on those misrepresentations, causing them to make arrearage payments to OneWest and preventing them from pursuing other means of averting foreclosure.

The tort of fraud and intentional misrepresentation are one and the same. *G & M Farms v. Funk Irr. Co.*, 808 P.2d 851, 855 (Idaho 1991). The Court therefore considers Plaintiffs' fraud and intentional misrepresentation claims together. Under Idaho law, a valid cause of action for fraud must include nine elements:

> (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury.

*Country Cove Development, Inc. v. May*, 150 P.3d 288, 293 (Idaho 2006).

Fraud claims must also satisfy the heightened pleading requirements of Rule 9(b), which provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b);

*see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The rule

requires that the complaint allege "the who, what, when, where, and how" of the alleged

fraudulent conduct, *Cooper v. Pickett*, 137 F.3d at 627 (internal quotation marks omitted),

and "set forth an explanation as to why the statement or omission complained of was false

and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en

banc); *see Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). "The purpose of this

rule is to ensure that defendants accused of the conduct specified have adequate notice of

what they are alleged to have done, so that they may defend against the accusations."

*Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).

Under this heightened standard, Plaintiffs' fraud claim is inadequately pled. The

Complaint contains only a conclusory summary of Defendant OneWest's allegedly

fraudulent statements. The Complaint alleges that "OneWest represented to Plaintiff it

would engage in a good faith and reasonable effort to save the Property from

foreclosure." (Compl. ¶ 66.) Later, it alleges that "OneWest represented to the Plaintiff it

was processing Plaintiff's workout and modification, the modification was under review,

entering the Forbearance Plan Repayment Agreement was necessary to receive loan

workout assistance, and that the foreclosure sale will be [sic] postponed in furtherance of

a loan workout to be evaluated for modification." (*Id.* ¶ 104.) Under Rule 9(b), this

synopsis of OneWest's representations is inadequate. Plaintiffs must plead with

particularity "the who, what, when, where, and how" of any statements in which

OneWest indicated that it would modify Plaintiffs' loan agreement. *Cooper*, 137 F.3d at 627.

### 3.    42 U.S.C. § 1983 Claim

Plaintiffs allege that OneWest and Freddie Mac violated several rights guaranteed by federal programs, including the "HOPE NOW Alliance," FDIC's "Mod in a Box" program, the Emergency Economic Stabilization Act of 2008, the Federal Reserve Bank's "Homeownership Preservation Policy for Residential Mortgage Assets." Plaintiffs also claim that Defendants violated the Due Process Clause and the Takings Clause of the Fifth Amendment. The Plaintiffs assert that Defendants are liable for these violations under 42 U.S.C. § 1983.

### A.    *Statutory Claims*

The Complaint fails to identify any violation of a federal statute or regulation giving rise to a private cause of action against Freddie Mac or OneWest. The mere existence of a federal statute does not create a private cause of action. A viable cause of action "must ultimately rest on congressional intent to provide a private remedy." *Astra USA, Inc. v. Santa Clara Cnty.*, __U.S. __, 131 S. Ct. 1342, 1347 (2011) (internal quotation marks omitted). The standard for an enforceable right under § 1983 is the same as for any private right of action: "clear and unambiguous" statutory language creating a cause of action. *Gonzaga University v. Doe*, 536 U.S. 273, 290 (2002).

Therefore, to survive a motion to dismiss, Plaintiffs must identify a statutory provision where Congress intended to provide an "auxiliary enforcement role to covered

entities" and allege a violation of that statutory provision. *Astra USA, Inc.*, 131 S. Ct. at 1347. Plaintiffs' broad identification of a number of federal policies intended to prevent foreclosures does not meet this standard. This Court concludes, as have the other federal district courts in the Ninth Circuit addressing this issue, that none of the programs cited by Plaintiffs create a private cause of action. *See, e.g., Gardner v. American Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1203 (E.D. Cal. 2010) (finding no private cause of action under federal programs designed to prevent foreclosures); *Lucia v. Wells Fargo Bank*, __F. Supp. 2d__, 2011 WL 3134422, at *5 (N.D. Cal. April 22, 2011) (same). Given the absence of a statutory cause of action, the Court will dismiss this claim with prejudice.

**B.**     ***Constitutional Claims***

Plaintiffs broadly allege a violation of the Takings and Due Process Clauses of the United States Constitution. These allegations also do not state a plausible claim for relief.

**(1)     Takings Clause**

Plaintiffs' allegation of a Takings Clause violation contains no more than the assertion that "Freddie Mac's foreclosure was an impermissible takings [sic] under the Fifth Amendment to the United States Constitution." (Compl. ¶ 85.)  This bare statement of legal conclusion is deficiently pled under Rule 8. *Iqbal*, 129 S. Ct. at 1950.

If Plaintiffs opt to amend the Complaint, it should note that the Takings Clause pertains only to state action. "The United States Constitution protects individual rights

only from *government* action, not from *private* action." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003). The Ninth Circuit has held that non-judicial foreclosure sales executed by a private lender do not generally involve state action. *Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003). A foreclosure sale involves state action only when there is "overt official involvement in the enforcement of creditors' remedies." *Id.* at 1094 (internal quotation marks omitted). The Ninth Circuit has also held that Freddie Mac is not a state actor. *American Bankers Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 75 F.3d 1401, 1406 (9th Cir. 1996). The factual basis of that holding, however, may have changed when the Federal Housing Finance Agency became Freddie Mac's conservator. *See* 12 U.S.C. § 1821(d)(2)(B)(i) (giving the conservator the authority to "conduct all business of [Freddie Mac]." In any event, a plausible claim for relief must plead facts establishing that an entity was a state actor *and* was overtly involved in "the enforcement of creditors' remedies" against the Plaintiffs. *Apao*, 324 F.3d at 1095.

### (1) Due Process

Plaintiffs' allege that Freddie Mac violated Plaintiffs' Due Process rights through its involvement in Plaintiffs' loan modification process. These assertions fail to state a plausible claim for relief on two accounts.

First, the Due Process Clause, like the Takings Clause, applies only to government actors. *American Bankers Mortg. Corp,* 75 F.3d at 1406. As the Complaint makes clear, Plaintiffs attempted to negotiate a loan modification with OneWest. (*See* Compl. ¶ 44.)

The Complaint contains no plausible factual allegation that Freddie Mac was somehow liable for OneWest's actions during loan modification negotiations.

Second, a "threshold requirement" for a viable Due Process claim is that Plaintiffs establish "a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). As explained above, federal laws encouraging lenders to reduce the number of foreclosures do not vest Plaintiffs with a property interest in receiving a loan modification. *Lucia*, 2011 WL 3134422 at *5. Therefore, Plaintiffs do not have a property interest in loan modification that could give rise to a viable Due Process violation.

**5.      Tortious Interference With Contract.**

Plaintiffs allege that Pioneer and OneWest tortiously interfered with the contracts comprised of the Note and Deed. In Idaho, liability for interference with contracts exists when "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract." *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1083 (Idaho 2010) (quoting Restatement (Second) of Torts § 766 (1979)). Only a non-party to a contract can be liable for interference with contract. *See BECO Constr. Co., Inc. v. J-U-B Eng'rs, Inc.*, 184 P.3d 844, 850 (Idaho 2008) ("[Defendant] is not a stranger to the contract and therefore cannot be liable for tortious interference with such contract.")

Through assignment, both OneWest and Pioneer are parties to the Note and Deed.

Defendants cannot be liable for interference with a contract to which they are parties. Therefore, Plaintiffs have not pled a plausible claim for this cause of action.

**6.     Quiet Title and Appointment of Receiver**

In the second cause of action, Plaintiffs petition the Court to quiet title to the property in their name. In the seventh, Plaintiffs request that they be appointed as receivers. Given the Court's disposition of the Plaintiffs' various causes of action, Plaintiffs have not alleged a plausible basis for relief providing them title to or possession of the real property at issue.

In Idaho, "[a] mortgagor cannot without paying his debt quiet title as against the mortgagee." *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952) (internal quotation marks omitted). The Complaint contains no assertion that Plaintiffs tendered payment of their debt obligation. Accordingly, they cannot proceed on their quiet title action.

Plaintiffs' request that they be appointed as receiver is a question of remedy, rather than an independent cause of action. The Court has the power to appoint a receiver under Federal Rule of Civil Procedure 66. "Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009). Appointment of a receiver is "an extraordinary equitable remedy, which should be applied with caution." *Id.* at 844 (internal quotation marks omitted).

While there is no established test for determining whether to appoint a receiver, federal courts consider several factors in making the determination, including the

following:

> (1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id.* (citing Moore's, § 66.04[2][b] with internal quotations omitted). The Ninth Circuit has also considered "whether the defendant was of doubtful financial standing" and "whether the property was of insufficient value to insure payment." *Id.*

Nearly all of these factors weigh against appointment of a receiver. Most significantly, at this juncture Plaintiffs do not have a valid claim with which they may proceed. Plaintiffs have not alleged fraudulent conduct by Freddie Mac, the party currently in possession of the property. Plaintiffs have not indicated that Defendants are of "doubtful financial standing," or identified any imminent danger of injury to the proper. *Id.* Legal remedies appear adequate in this case. *Id.* Therefore, the Court will deny Plaintiffs' request that they be appointed receiver.

## CONCLUSION

In accordance with the analysis above, the Court will grant the Motion to Dismiss, except as to Plaintiffs' cause of action titled "Securitization Separated the Deed of Trust from the Note." (Compl. ¶¶ 15-30.) The Court will reserve judgment on that portion of

the Complaint. The Motion to Strike is granted in part and denied in part, as indicated above..

## ORDER

**IT IS ORDERED:**

1. Defendants Motion to Strike Affidavits of Mark Russell and Scott Rose. (Dkt. 28) is **GRANTED** in part and **DENIED** in part. Defendants' Motion is granted with respect to Exhibit 1 attached to Plaintiffs' first Response (Dkt. 21-1) and Exhibits 2, 3, 4, 5, and 10 attached to the amended Response (Dkt. 22-2, 3, 4, 5, 10.) Defendants' Motion is denied with respect to the remaining exhibits (Dkt. 21-2; 22-1; 22-6 to -9.).

2. Defendants' Motion to Dismiss (Dkt.10) is **GRANTED** in part and **DEFERRED** in part. The Court defers judgment on the Motion as it applies to Plaintiffs' claim that "Securitization Separated the Deed of Trust from the Note." (Compl. ¶¶ 15-34). Plaintiffs' claims alleging violations of federal law (Compl. ¶¶ 70-83 ), violation of notice of default provisions of state law (Compl ¶¶ 38-43), and violation of bidding procedures (Compl. ¶¶ 46-48) are dismissed with prejudice. All other claims are dismissed with leave to amend.

3. This Court has asked the Idaho Supreme Court to notify it when Idaho Supreme Court issues its decision in *Trotter v. Bank of New York Mellon,* No. 38022-2010.  Upon review of that decision, this Court will either ask the parties to

file short supplemental briefs addressing the case, or the Court will enter its

final order on the remaining issues.



DATED:  **October 20, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge